HARDY, Judge.
Plaintiffs; as the owners of a tract of 9.89 acres of land located in Caddo Parish, instituted this action for the judicial loca-t tion of the boundary between the said tract and the adjoining estate of the defendant to the south. Pursuant to the prayer of the petition the district judge appointed J. C. McLemore, surveyor, to inspect and survey the premises described and to make report thereon to the court. In accordance with this order McLemore surveyed the property, and filed a procés verbal and plat of survey with the court on May 9, 1956. Thereupon, and on the same date, defendant answered plaintiffs’ suit, which pleading embodied as the only defense to the fixing of the ideal boundary the plea of thirty-year prescription, acquirendi causa. The case was heard on defendant’s plea of prescription and judgment was rendered sustaining the plea and fixing the boundary between the contiguous estates of plaintiffs and defendant in accordance with a so-called occupation line as fixed on a plat of survey prepared by Geo. E. Dutton, engineer, dated March 28, 1956. From this judgment plaintiffs have appealed.
The basis of defendant’s plea of prescription is set forth in Article VII of his answer as follows:
“Further answering, defendant shows that his property and that of plaintiffs were separated by a fence for more than 30 years; that part of said fence still exists, and that other portions thereof are evidenced by line trees, old posts and other markers; that the parties and their ancestors in title recognized and acquiesced in said fence and markers as the boundary line between their properties, having actually, physically, openly, peacefully, continuously and without interruption, possessed, as owners, up to the same for more than 30 years.”
' It is evident from a consideration of the above stated plea that defendant, in asserting the same, assumed "the burden of *235 establishing two factual issues; (1) The location of the fence, and (2) the open and adverse possession, by defendant and his ancestors in title, of the property up to the established location of the fence. There is no dispute as to the location of the east and west ideal boundary line between the respective estates of plaintiffs and defendant, which line is described as follows:
“Begin at a point 13S0.0 feet east and 1410.0 feet south of the northwest corner of Sec. 25, T. 17 N., R. 18 W., Caddo Parish, La. Run thence east and perpendicular to the east line of St. Vincent Ave. a distance of 457.9 feet to a point on the west line of the K. C. S. & G. R. R.”
The area which defendant contends to have acquired by prescription is a strip of land which extends approximately nine feet north of the above described ideal boundary line and runs east and west across the entire width of the property, a distance of 457.7 feet. Defendant contends that a fence was erected and maintained for a period of considerably more than thirty years prior to the institution of this suit along this line, which fence encroached approximately nine feet upon plaintiffs’ property, and that he and his ancestors in title, during this period, have openly exercised possession of the property up to the said fence line. Accordingly, consideration must first be given to the facts established on trial of the plea of prescription which serve to prove, or disprove, the existence of the fence and the possession of defendant and his ancestors in title.
In or about the year 1912 the property now owned by plaintiffs was acquired by a glass manufacturing company which, after its acquisition of title, erected a fence roughly enclosing the four sides of the property. Defendant rests upon the proposition that the south fence line of this enclosure was located some nine feet, more or less, north of the ideal boundary. In support of this claim defendant principally relies upon a plat of survey made by Geo. E. Dutton, engineer, on March 28, 1956, and the testimony of Dutton and other witnesses with reference to the physical evidences shown by said plat.
The Dutton survey was made at the request of defendant and it is obvious from Dutton’s testimony that his sole concern was involved with ascertaining and showing physical evidence which would support the conclusion that a fence line had existed at a point some nine feet north of the true boundary line. In pursuance of this purpose the Dutton plat shows what he has denominated as an “Old Occupation” line running from an iron pipe set on the west line of the K. C. S. Railroad to another iron pipe set on the east line of St. Vincent Avenue. Dutton shows on his plat, and testified that he found on the ground, a fence extending for some 150 feet, approximately in the center of the 457.7 foot east and west distance. In addition to the fence Dutton also platted and testified to the existence of several chinaberry trees, some old posts, some light poles and the existence of two outbuildings, a toilet structure and a chicken shed. On the basis of these “markers” Dutton projected his “Old Occupation” line across the entire width of the property. The plat shows this “Old Occupation” line to conform to the 150 foot fence line which Dutton found on the ground, but an examination of the plat conclusively establishes the fact that none of the other markers conform to the line. The locations of the chinaberry trees and the light poles are fixed several feet south of the so-called occupation line; the chicken shed extends over the occupation line to the north; the two old posts are north of the projected occupation line, as is the entire structure of the outdoor toilet. We find the testimony of this witness to have comparatively little, if any, value in supporting defendant’s claim, as it seems clear that Dutton ran a straight line from a pipe marker on one side to a pipe marker on the other side of the property, and, since this line coincided with the 150 foot fence line, he concluded that other physical evidences any *236 where near the line could be used in support of the conclusion that at some time a fence had existed in approximately this location. It is noteworthy that, upon cross-examination of this witness, the existence of other markers was established as being on or adjacent to the ideal boundary, none of which markers, however, were shown by Dutton on his plat.
Defendant attempted, through the testimony of several other witnesses who had been familiar with the property over a long period of years, to support the conclusion which he urges should be drawn from the showing of the “Old Occupation” line on the Dutton survey plat. Examination and careful consideration of the testimony of these witnesses indicates that they recall the existence of a fence which they believed to enclose the glass company property, now owned by plaintiffs, and located and identified the south 'fence of this property as being along the “Old Occupation” line shown by Dutton.
On the whole, we do not find that the testimony, which seeks to establish the “Old Occupation” line of the Dutton survey as the true line of a long existing fence, is of such certainty and accuracy, even within reasonable limits, as to justify its acceptance as proof of a boundary fence that existed for a period of more than thirty years.
However, it is not necessary for us to rely entirely upon the lack of certainty of defendant’s evidence on this point, for other facts were established by plaintiffs on trial which are entitled to great weight in a determination of the issue presented. Plaintiffs acquired title to the property involved in the year 1946 and, within some two or three months thereafter, they caused a survey to be made by the firm of Minor & Shoup, consulting engineers of Shreveport. The map of this survey shows the location of the south boundary line in accordance with the title and, again, we point out the fact that all of the numerous surveys made of this property are in complete and exact accord in this respect. However, the evidential value of the Minor & Shoup survey lies in the fact that the plat of survey shows the existence of fence lines enclosing the whole of the property, none of which accord with the survey lines which correctly bound the tract. The south fence line as shown by the Minor & Shoup survey runs at an angle across the southern end of the property from a point six feet north and four feet west of the ideal southwest corner to a point eighteen feet north and approximately twenty-four feet west of the southeast corner of the tract. The importance of this survey is that it serves to establish the fact that the southern fence line, which was a part of the enclosed portion of the tract acquired by plaintiffs, could not possibly have been coordinate with the so-called “Old Occupation” line asserted by defendant on the basis of the Dutton survey.
One other fact of persuasive importance is disclosed by the record. In or about the year 1941 defendant and his co-heirs caused a survey to be made by H. E. Barnes, civil engineer, for the purpose of laying out and subdividing what was known as the Leien-decker Subdivision. On the Barnes’ survey map the location of the north boundary line of defendant’s property is shown to accord with the ideal boundary between his estate and that of plaintiffs. Defendant admitted that he signed the Barnes survey map which evidenced a survey made in November, 1942, the map thereof being recorded in the Conveyance Records of Caddo Parish in 1943. From this it would appear that defendant was not asserting any claim to a boundary encroaching beyond the ideal line.
One of the plaintiffs testified that some time after the making of the Minor & Shoup survey, either in the year 1946 or in 1951, he requested defendant to remove any improvements which existed north of the true line and that this request was renewed from time to time. This testimony is not positively denied by defendant but he was of the opinion that the request was not *237 made until possibly sometime during the year 1956.
Careful analysis of the record before us leads us to certain very definite conclusions : (1) That defendant has failed to establish the existence of a boundary line nine feet, more or less, north of the ideal boundary, either marked by a fence or by other monuments and evidences, and that he has further failed to establish that nature and character of possession which is essential to support his plea of thirty-year prescription; (2) that defendant has failed to establish the existence of an open and adverse claim of possession beyond the ideal boundary line, and in fact, as late as 1942 accepted and permitted to be filed in the public records a plat of survey confirming the ideal line as the northern boundary of his ownership; (3) that the “Old Occupation” line as fixed by the Dutton survey has not been supported by any sort of a preponderance of evidence which would be requisite to a judicial acceptance and approval; (4) that the fence relied upon by defendant in the instant case was not erected by him and has never been claimed by him as evidence of a boundary.
Our evaluation of the facts as disclosed by the record which have led to the above enumerated conclusions serves to establish manifest error as to the judgment appealed from.
Counsel for defendant relies upon the holding of the Supreme Court in the recent ease of Sessum v. Hemperley, 233 La. 444, 96 So.2d 832, but we are unable to find anything in the opinion of the Supreme Court on final hearing of the above case which would support the position taken by defendant under the facts of the instant case. On the contrary, we think the Sessum case clearly supports the conclusion which we have above stated. In the Sessum case the court found that the fence which constituted a visible physical boundary was erected by defendants (who asserted the plea of prescription) or their authors in title more than thirty years prior to the institution of suit; that it was maintained during the entire time and that defendants peaceably and publicly possessed the land enclosed within said fence. None of these facts are present in the instant case, for, here, there was no fence in the nature of a visible physical boundary existing at the time of trial, nor was there any evidence of the constant maintenance of such a fence over a period of thirty years, nor did this defendant establish a peaceable and public possession up to the fence which constituted an enclosure made by plaintiff’s ancestors in title for their own convenience and benefit and not as the establishment of a boundary.
As remarked in the Sessum case the burden of proof rested upon the defendants to prove the facts necessary to support the prescription of thirty years.
The location of the fence erected by the defendant in the Sessum case, which was accepted as the boundary, was determined by a survey of a line between the properties involved; was constructed as a boundary fence',' recognized and maintained as such for more than thirty years, and the owners of the property enclosed thereby possessed, as owners, the lands up to the said fence. None of these elements are present in the instant case and, to the contrary, it is clear that no fence was ever fixed and located by a survey, nor was any fence intended or accepted by either party as a boundary line, nor was any fence maintained for more than thirty years, nor did this defendant ever possess as owner all the property up to the fence.
With further reference to the Sessum case we emphasize the following extract from the opinion of the court [233 La. 444, 96 So.2d 843]:
“Clearly, the now well-established rule, as a result of our codal provisions and the cited authorities, is that where there is a visible boundary which has been in existence for thirty years or more and the defendant in a boundary action and his predecessors in title *238 have, in addition to the land described in the title, actually possessed land extending to that visible boundary, a plea of prescription of thirty years should be sustained. It is our view that for the rule to be applicable two conditions must concur: First, there must be a visible boundary, artificial or otherwise ; second, there must be actual uninterrupted possession, either in person or through ancestors in title, for thirty years or more of the land extending beyond that described in the title and embraced within the visible bounds.” (Emphasis supplied.)
Finally, we gratuitously comment that, insofar as the holding in the Sessum case is concerned, it has effected no change in the prior jurisprudence except as to the question of the requirement of consent by the owners of. the adjoining estate to the initial establishment of boundary markers at variance with the ideal line.
For the reasons assigned the judgment appealed from is set aside, annulled and reversed, and
It Is Now Ordered, Adjudged and Decreed that the plea of prescription of thirty years, acquirendi causa, be and it is overruled, and
It Is Further Ordered, Adjudged and Decreed that there be judgment fixing the boundary between the lands of plaintiffs, R. F. and William E. Fitzgerald, and defendant, J. A. Leiendecker, Jr., in accordance with the map of survey made by Jessie C. McLemore, dated April 20, 1956, establishing and .fixing the said line as follows:
“Begin at a point 1350.0 feet east and 1410.0 feet south of the northwest corner of Sec. 25, T. 17 N., R. 18 W., Caddo Parish, La. Run thence east and perpendicular to the east line of St. Vincent Ave. a distance of 457.9 feet to a point on the west line of the K. C. S. & G. R. R.”
It Is Further Ordered that the fees and expenses of Jessie C. McLemore, surveyor, in connection'with the making of the survey above described be and they are divided equally and assessed as costs between plaintiffs and defendant, and all other costs are taxed against defendant-appellee.